**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Erin L. Schlink,<br><br>            Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of the Social Security Administration,<br><br>            Defendant. | No. CV-11-02522-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the appeal of Plaintiff Erin L. Schlink, which challenges the Social Security Administration's decision to deny benefits. (Doc. 18.) For the reasons set forth below, the Court vacates that decision and remands for an award of benefits.

**BACKGROUND**

On October 9, 2007, Schlink applied for disability insurance benefits, alleging a disability onset date of July 30, 2007. (R. at 15.) Schlink's date last insured ("DLI") for disability insurance benefits, and thus the date on or before which she must have been disabled, was December 31, 2012. (*Id.* at 17.) Schlink's claim was denied both initially and upon reconsideration. (*Id.* at 15.) Schlink then appealed to an Administrative Law Judge ("ALJ"). (*Id.*) The ALJ conducted a hearing on the matter on April 6, 2010, in Phoenix, Arizona. (*Id.*) At the hearing, Schlink amended her alleged onset date of

disability to July 1, 2008. (*Id.*)

In evaluating whether Schlink was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (*Id.* at 16–17.) At step one, the ALJ determined that Schlink had not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 17.) At step two, the ALJ determined that Schlink suffered from the severe impairments of fibromyalgia, lupus (stable), and history of lumbar surgery. (*Id.*) At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (*Id.*)

At that point, the ALJ made a determination of Schlink's residual functional capacity ("RFC"),[2] concluding that Schlink could perform light work as defined in 20

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 04.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted).

[2] RFC is the most a claimant can do despite the limitations caused by his

C.F.R. § 404.1567(b) except that she can sit for thirty to forty-five minutes at one time, total about six out of eight hours; stand and walk for thirty to forty-five minutes at one time, total six out of eight hours; stoop, kneel, crouch, crawl, and climb ramps and stairs occasionally; balance frequently; but never climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to temperature extremes, vibration, airborne irritants, and hazards. (*Id.* at 18.) The ALJ thus determined at step four that Schlink did not retain the RFC to perform her past relevant work as a post office clerk. (*Id.* at 20.) The ALJ therefore reached step five and determined that Schlink could perform a significant number of other jobs in the national economy that met her RFC limitations. (*Id.* at 20–21.) Given this analysis, the ALJ concluded that Schlink was not disabled. (*Id.*)

The Appeals Council declined to review the decision. (*Id.* at 1.) The Council accepted the ALJ's statements of the law, the issues in the case, and the evidentiary facts, as well as the ALJ's findings and ultimate conclusions regarding whether Schlink was disabled. (*Id.* at 2.) The Council agreed that Schlink was not disabled. (*Id.* at 1.)

Schlink filed the complaint underlying this action on December 20, 2011, seeking this Court's review of the ALJ's denial of benefits.[3] (Doc. 1.) The matter is now fully briefed before this Court. (Docs. 18, 21, 27.)

**DISCUSSION**

**I.   Standard of Review**

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*,

---

impairments. *See* S.S.R. 96-8p (July 2, 1996).

[3] Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

- 3 -

278 F.3d 947, 954 (9th Cir. 2002).  Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Harmless errors in the ALJ's decision do not warrant reversal. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1055–56 (9th Cir. 2006). Errors are harmless if they are "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). Thus, for example, an error is harmless if the record shows that "the ALJ would have reached the same result absent the error" or "it was clear [the errors] did not alter the ALJ's decision." *Id.* "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009).

**II.    Analysis**

Schlink argues that the ALJ erred by: (1) failing to consider the effects of all the impairments in combination in assessing Schlink's RFC, (2) failing to articulate sufficient reasons for rejecting Schlink's subjective complaints, and (3) failing to articulate sufficient reasons for rejecting Schlink's treating physician's opinion. The Court will address each argument in turn.

- 4 -

### A.     Failure to Consider Effects of All Impairments in Combination

In making the RFC determination, the ALJ is required to consider both severe and non-severe impairments. 20 C.F.R. § 404.1545(a)(2). Schlink asserts that the ALJ failed to consider many of her severe impairments, including osteoporosis, bilateral foot fractures, right rotator cuff tendonitis, bursitis, clavicle fracture, and degenerative joint disease of the right knee. (Doc. 18 at 11.) Indeed, the record shows that Schlink suffers from osteopenia or osteoporosis (R. at 404, 470), bilateral foot fractures (*id.* at 367), right rotator cuff tendonitis as a result of a clavicle fracture (*id.* at 375–77), and degenerative joint disease in her knees (*id.* at 404). None of these impairments were discussed by the ALJ in making her determination of Schlink's RFC. (*See id.* at 18–20.) Nor did the ALJ explain why she did not consider these impairments. Thus, there is no substantial evidence in the record supporting the ALJ's failure to take these limitations into account, whether they are severe or non-severe, in considering Schlink's RFC. This is a ground on which to vacate the ALJ's decision.

The Commissioner does not dispute that the ALJ failed to consider these impairments, but argues that the ALJ's error was harmless because Schlink "has not demonstrated that she was ultimately harmed by the ALJ's finding of which impairments were 'severe.'" (Doc. 21 at 10.) However, Schlink's argument is not that the ALJ erred in finding the above impairments not severe at Step 2, but rather that the ALJ failed to consider the impairments at all, including in determining Schlink's RFC. (Doc. 18 at 11.)

The Commissioner additionally asserts the error is harmless because Schlink failed to show that the above impairments "posed additional functional limitations that would preclude the performance of a range of light work." (Doc. 21 at 10.) However, at the hearing, Schlink testified that her impairments caused severe limitations in her ability to reach and stand or walk for extended periods of time. (R. at 36–37.) Evidence in the record shows that Schlink's rotator cuff tendonitis caused shoulder pain, weakening and

- 5 -

fatigue of the shoulder, and discomfort with overhead activity. (*Id.* at 375.) The vocational expert ("VE") subsequently testified that the jobs available for someone with Schlink's age, education, and work history, and some of Schlink's limitations as set out in a hypothetical by the ALJ, would be cashier, assembly worker, or quality control positions. (*Id.* at 44–45.) Upon questioning by Schlink's attorney, the VE testified that all of these positions require frequent reaching. (*Id.* at 46.) Thus, if the ALJ had properly considered Schlink's rotator cuff injury, she may have found that there were no jobs available for Schlink given her shoulder limitations. As such, the ALJ's error in failing to consider all of Schlink's impairments in evaluating her RFC is not "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115. The Court rejects the Commissioner's characterization of this error as harmless.

**B.     Failure to Articulate Sufficient Reasons for Rejecting Schlink's Subjective Complaints**

The ALJ must engage in a two-step analysis in determining whether a claimant's testimony regarding her subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). The ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. If she has, and the ALJ has found no evidence of malingering, then the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.*

The Commissioner disagrees that the appropriate standard for the ALJ in rejecting claimant testimony is one that requires clear and convincing reasons. (Doc. 21 at 11.) She relies on *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (en banc), where the Ninth Circuit set out to "determine the appropriate standard for evaluating subjective complaints of pain in Social Security disability cases." (*Id.* (citing *Bunnell*, 947 F.2d at 342).) The *Bunnell* Court opined that once there has been objective medical evidence of

an underlying impairment, the ALJ must make specific findings, supported by the record, for why he rejected the claimant's testimony on the severity of the pain. 947 F.2d at 345–46. This is to ensure that the ALJ "did not 'arbitrarily discredit a claimant's testimony regarding pain.'" *Id.* (quoting *Elam v. R.R. Retirement Bd.*, 921 F.2d 1210, 1215 (9th Cir. 1991)). Thus, the Commissioner claims that the standard governing credibility is a specific finding standard, which it claims is more in line with the overall "substantial evidence" standard that governs these cases.

Many panels of the Ninth Circuit have subsequently held, however, that if there is objective medical evidence of an underlying impairment, "and there is no evidence of malingering, then the ALJ must give 'specific, clear and convincing reasons' in order to reject the claimant's testimony about the severity of the symptoms." *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)); *see also, e.g.*, *Lingenfelter*, 504 F.3d at 1036. The Commissioner claims that these cases have overruled the standard articulated in *Bunnell* in violation of the Ninth Circuit rule that only en banc panels can overrule existing precedent. (Doc. 21 at 11 (citing *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996).) That is not the case. *Bunnell* articulated a general standard for dealing with claimant testimony. The many subsequent cases have addressed a subset of cases where there is no evidence of claimant malingering. They have articulated a "clear and convincing" standard for those situations. Thus, the Court will apply that standard to the ALJ's determination.

Here, at the first step, the ALJ found that Schlink's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. at 18.) However, at the second step, the ALJ found that Schlink's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible. (*Id.*) The ALJ did not state that she found any evidence of malingering; thus, her reasons for rejecting Schlink's symptom testimony must be clear and convincing. *Lingenfelter*, 504 F.3d at 1036. The ALJ set forth two reasons for finding Schlink's testimony not credible:

(1) her daily activities are not limited to the extent one would expect given Schlink's complaints of disabling symptoms and limitations, and (2) Schlink's "longitudinal medical history" is not consistent with her testimony. (*Id.* at 18–19.)

The ALJ found that Schlink's daily activities were inconsistent with her subjective complaints of pain. These activities include caring for her baby and pet dogs, attending church weekly, going grocery shopping twice a week, doing laundry, sweeping, vacuuming, preparing meals, managing household finances, and going to movies and restaurants. (*Id.* at 19.) The ALJ stated that these activities were "suggestive of at least light exertional capacity." (*Id.*) The ALJ also relied on the opinion of a state examining physician who found that Schlink's activities were "generally unimpaired." (*Id.*)

"[D]aily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, the claimant "should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Schlink testified at the hearing that while she was "able to help out around the house," she did "very little" and that her husband did "most of the cleaning." (R. at 39.) She also testified that when she made meals, she only made microwaveable meals or sandwiches. (*Id.*) In addition, she testified that her husband did most of the grocery shopping. (*Id.* at 40.) Her care for her son consisted of turning the TV on for him, talking to him, watching educational programs with him, and fixing him a sandwich or microwaveable meal. (*Id.* at 41.) She testified that in order to hold him, she had to sit down and have him crawl into her lap. (*Id.* at 42.) The ALJ found that this testimony was unreliable because it conflicted with her report to a state agency physician in July 2008. However, that physician reported that while Schlink was able to perform routine household tasks, she sometimes needed "help with basic self-care when she has excessive

pain." (*Id.* at 291.) The physician did not state that Schlink was completely unlimited in her ability to perform these tasks, and indeed her opinion is consistent with Schlink's testimony that she receives help from her husband. Furthermore, while the ALJ stated that she relied on the state agency physician's opinion that Schlink's activities were "generally unimpaired," that physician was evaluating Schlink solely for mental or psychological problems, and made no attempt to discern Schlink's physical limitations. (*Id.* at 292.)

The ALJ did not explain how Schlink's daily activities translated into an ability to perform regularly in the workplace, instead stating generally that the activities "are suggestive of at least light exertional capacity." *See Orn*, 495 F.3d at 639. This is not a "specific, clear and convincing reason[]" for finding Schlink's testimony not credible. *Lingenfelter*, 504 F.3d at 1036. Moreover, the alleged inconsistency on which the ALJ relies does not exist—as discussed above, Schlink's daily activities as reported to the state agency physician are not, in fact, incompatible with her testimony at the hearing. As such, the ALJ's first reason for rejecting Schlink's subjective complaint testimony is not supported by clear and convincing reasons.

The ALJ also found that Schlink's testimony was not credible because it was inconsistent with her "longitudinal medical history." (R. at 19.) She cites to medical opinions describing Schlink's lupus and fibromyalgia as "stable," "mild," or "moderate." (R. at 19.) The Commissioner argues that inconsistency with the medical record is a sufficient basis for rejecting a claimant's subjective testimony. (Doc. 21 at 12 (citing *Carmickle*, 533 F.3d at 1161).) However, the evidence cited by the ALJ does not contradict Schlink's testimony regarding her pain and impairments. The fact that doctors consider Schlink's condition to be "stable" does not mean that she suffers no limitations on her ability to work. For example, on three occasions, Schlink's treating physician Dr. Jajoo described her lupus as "mild" and her fibromyalgia as "moderate" but noted that she still suffered pain, fatigue, and morning stiffness. (R. at 405, 413, 419.) During

- 9 -

another visit, Dr. Jajoo described Schlink's lupus and fibromyalgia similarly but also noted fatigue; neck, joint, and muscle pain; weakness and tingling in her musculature; and depression. (*Id.* at 402–03.) Thus, these reasons given by the ALJ for rejecting Schlink's testimony are insufficient.

The ALJ also stated that Schlink "admitted . . . that physical therapy and the use of a TNS unit have helped at times." (*Id.* at 19.) She also pointed to evidence that "medications have been effective in controlling [Schlink's] symptoms." (*Id.*) While it is true that the effect of medication on a claimant is relevant, only "impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Here, Schlink testified at the hearing that her TNS unit "doesn't always help but at times it does." (R. at 40.) The only other evidence offered by the ALJ is a statement by Dr. Jajoo that Schlink's "[a]ntiphospholipid antibody syndrome is under good control with current medications." (*Id.* at 418.) This statement does not address the other impairments from which Schlink is suffering, and indeed in the same paragraph Dr. Jajoo notes that Schlink's fibromyalgia continues to cause symptoms. (*Id.*) Thus, this evidence does not support the ALJ's rejection of Schlink's credibility, either.

None of the evidence cited by the ALJ constitutes "specific, clear and convincing reasons" for rejecting Schlink's subjective symptom testimony as not credible. The ALJ's rejection of Schlink's testimony was legal error and thus is grounds for reversing the decision.

### C.    Improperly Rejecting Treating Physician's Opinion

"The medical opinion of a claimant's treating physician is entitled to special weight." *Walter v. Astrue*, No. CV-09-1016-PHX-GMS, 2010 WL 1511666 at \*7 (D. Ariz. Apr. 15, 2010) (citing *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989)) (internal quotations omitted). This is because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Andrews*

- 10 -

*v. Shalala*, 53 F.3d 1035, 1040–41 (9th Cir. 1995). If the treating physician's opinion is supported by the record and not inconsistent with other evidence, it is accorded controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Even if the opinion is not given controlling weight, it is still entitled to deference. *Id.* at 632 (citing SSR 96-2p at 4, 61 Fed. Reg. at 34,491). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Id.* Social Security regulations set out factors for determining the amount of weight to give to a treating physician's opinion. 20 CFR § 404.1527(c)(i)–(ii). These factors include the length of the treatment and frequency of examination, medical evidence provided to support the opinion, consistency with the record as a whole, and specialization. *Id.*

Schlink's treating physician, Dr. Bottner, twice opined that Schlink was unable to work eight hours per day, five days a week. (R. at 400–01, 432–33.) However, the ALJ "accord[ed] little weight to these assessments as they are inconsistent with the progress notes of the treating specialist." (*Id.* at 20.) The ALJ also cited inconsistency with the DDS doctor's opinion and the record of the claimant's daily activities as reasons for rejecting Dr. Bottner's opinion. (*Id.*)

Schlink argues that, in fact, the progress notes of the treating specialist, Dr. Jajoo, do not contradict Dr. Bottner's opinion. The ALJ found it significant that Dr. Jajoo "never placed restrictions on [Schlink]." (*Id.*) However, as Schlink points out, this characterization is incorrect. In December 2006, Dr. Jajoo noted that Schlink was "having trouble with work because of her fatigue and flare ups and fibromyalgia flare ups" and that she sometimes had to miss up to a week of work at a time. (*Id.* at 223.) Thus, Dr. Jajoo gave her an FMLA note that would allow her to stay home up to seven days a month. (*Id.*) In June 2007, Dr. Jajoo recommended that Schlink only work four days a week and have three consecutive days off. (*Id.* at 217.) Finally, in November 2007, Dr. Jajoo recommended that Schlink stop working entirely. (*Id.* at 209.) In March 2008, Dr.

- 11 -

Jajoo noted that Schlink was feeling "much better now that she is not working." (*Id.* at 422.) Rather than contradicting Dr. Bottner's opinion, Dr. Jajoo's notes lend substantial support to Dr. Bottner's conclusion that Schlink is unable to work. As such, the ALJ's finding that Dr. Bottner's opinion was contradicted by the progress notes of Dr. Jajoo is not supported by substantial evidence.

The ALJ also stated that Dr. Bottner's opinion was contradicted by the opinion of the state DDS physician, who opined that Schlink retained the capacity to perform light exertional work. (*Id.* at 297–304.) Even if the state DDS physician's opinion constituted substantial evidence contradicting Dr. Bottner's opinion, however, Dr. Bottner's opinion as a treating physician is still entitled to deference. *Orn*, 495 F.3d 625, 633. "Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate' reasons supported by substantial evidence in the record." *Id.* As set out above, § 404.1527 lists the factors to consider in determining the weight to give a treating physician's opinion. Here, the factors favor giving more weight to Dr. Bottner's opinion.

Dr. Bottner has been Schlink's treating physician for twenty years. (R. at 33.) His opinion that Schlink could not work, given in March 2010, is the most recent in the record. (*Id.* at 433.) By contrast, the state physician saw Schlink in June 2008. (*Id.* at 304.) Furthermore, as discussed above, Dr. Bottner's opinion is supported by the opinion of Schlink's treating specialist, Dr. Jajoo. Conversely, the state DDS physician appears to have seen Schlink only once. He did not set forth independent clinical findings to support his conclusion that Schlink was capable of light exertional work; rather, he simply filled out a checklist of Schlink's capabilities. (*Id.* at 297–304.) Indeed, the only factors he relied on in forming his opinion appear to be Schlink's age, height, weight, blood pressure, and pulse. (*Id.* at 298.) Finally, the ALJ failed to give "specific and legitimate reasons" for finding the state DDS physician's opinion more credible than the opinion of Schlink's treating physician and specialist. She stated merely that Dr. Bottner's opinion

- 12 -

was "at odds" with the state DDS physician's opinion. (*Id.* at 20.) As such, the ALJ erred in giving the state DDS physician's opinion greater weight than the opinion of Schlink's treating physician of twenty years.

Finally, the ALJ relied on the inconsistency between Dr. Bottner's opinion and Schlink's daily activities as a reason for giving less weight to Dr. Bottner's opinion. (*Id.* at 20.) However, as discussed in Part II.B above, Schlink's testimony and the record of her daily activities do not show that she was unimpaired. Rather, the testimony and evidence show that while she could perform daily household activities, she was limited in what she could do and often required help from her family members. Furthermore, there is no evidence that the daily activities of which she was capable of performing were skills that were transferable to the workplace. As such, the ALJ's finding that Dr. Bottner's opinion is contradicted by Schlink's daily activities is not supported by substantial evidence.

In sum, none of the reasons cited by the ALJ for giving little weight to Dr. Bottner's opinion are supported by substantial evidence. Thus, the ALJ's decision is vacated for improperly rejecting the opinion of Schlink's treating physician.

**III.   Remedy**

Having decided to vacate the ALJ's decision, the Court has the discretion to remand the case either for further proceedings or for an award of benefits. *See Reddick*, 157 F.3d at 728. The rule in this Circuit is that the Court should:

> credit[] evidence and remand[] for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting [certain] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

Here, the ALJ has failed to provide legally sufficient reasons for ignoring

- 13 -

Schlink's impairments of osteoporosis, foot fractures, right rotator cuff tendonitis, and degenerative joint disease. In addition, she failed to provide legally sufficient reasons for rejecting Schlink's subjective symptom testimony and for giving little weight to the opinion of Schlink's treating physician, Dr. Bottner.

If the above evidence were credited, the ALJ would be required to find Schlink disabled. The vocational expert testified at the hearing that if Schlink's subjective symptom testimony were credited, she would not be able to perform any of her past work. (R. at 46.) In addition, there would be no other jobs in the national economy she could perform. (*Id.*) Similarly, Dr. Bottner twice opined that Schlink was unable to work a regular eight-hour, five-day work week. (*Id.* at 400–01, 432–33.)

Thus, it is "clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited," and there remain [no] "outstanding issues that must be resolved before a determination of disability can be made." *Smolen*, 80 F.3d at 1292. Under these circumstances, the Court will remand for a computation of benefits.

## CONCLUSION

The ALJ erred in ignoring several of Schlink's impairments and in rejecting Schlink's symptom testimony and the opinion of her treating physician. The ALJ's decision that Schlink is not disabled is not supported by substantial evidence.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

- 14 -

**IT IS THEREFORE ORDERED** that the ALJ's decision is **VACATED** and this case is **REMANDED** for an award of benefits. The Clerk of the Court is directed to enter judgment accordingly.

Dated this 11th day of April, 2013.

*A. Murray Snow*
/G. Murray Snow
United States District Judge